1

2

3

4

5

6

7

8                  **UNITED STATES DISTRICT COURT**

9                      **DISTRICT OF NEVADA**

10

11  CLARA ANN KNIGHT, individually  )        3:17-cv-00125-HDM-VPC
    and as heir at law to LOGAN     )
12  LORAINE KNIGHT, deceased; RACHEL )
    WILSON, heir at law to LOGAN     )        ORDER
13  LORAINE KNIGHT, deceased; and THE)
    ESTATE OF LOGAN LORAINE KNIGHT   )
14                                   )
                        Plaintiffs,  )
15                                   )
    vs.                              )
16                                   )
    LM GENERAL INSURANCE COMPANY, an
17  Illinois corporation,

18                        Defendant.

19  _____

20       Before the court are plaintiffs Clara Ann Knight, Loraine

21  Knight, Rachel Wilson, and the estate of Logan Loraine Knight

22  (collectively "plaintiffs") motion for summary judgment (ECF No.

23  16) and defendant LM General Insurance Company's ("LM General")

24  countermotion for summary judgment (ECF No. 18).  Each party has

25  responded to the respective motions (ECF No. 20; ECF No. 19) and

26  the parties have replied to those responses (ECF No. 22; ECF No.

27  21).

28       The parties seek resolution of a single insurance coverage

                                   1

issue under a policy of automobile insurance issued by LM General. The issue is whether an exclusion to the liability coverage of the LM General policy precludes coverage for wrongful death/bodily injury claims arising from a February 23, 2015 motor vehicle collision involving LM General's insured, Paul S. Williams ("Williams"). Both parties agree there are no material issues of fact in dispute and this action should be decided on the cross motions for summary judgment.

**I. Background**

LM General issued an insurance policy to Williams with effective dates of April 15, 2014 to April 15, 2015. The policy provides liability coverage of $250,000 for each person and $500,000 for each accident. The policy provides coverage "for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident." (ECF No. 18 (Def. Countermotion Summ. J. Ex. 2 (Williams' LM General insurance policy)). However, the policy includes an exclusion which provides:

> **B.** We do not provide Liability Coverage for the
> ownership, maintenance or use of:
> . . .
> **2.** Any vehicle, other than "your covered
> auto," which is:
> a. owned by you; or
> b. furnished or available for your
> regular use.

*Id.*

The subject vehicle is a Kia Sportage assigned to Williams by his employer PGM Safety Services, LLC ("PGM"). PGM employed Williams as a safety specialist and his duties included providing

safety services to PGM clients in northern Nevada.  As part of his
employment, PGM provided Williams with the Kia to drive to and from
work and to use for work purposes throughout the business day.

Williams had driven his assigned Kia for several years prior
to the collision.  He was given a set of keys and was expected to
drive the Kia to and from work and to take it to job sites during
the workday.  Williams kept the Kia at his home in between work
periods.  Williams was also expected to keep up with the Kia's
regular maintenance and was reimbursed for the costs through PGM.
PGM prohibited any personal use of the company vehicles, including
even inconsequential errands.  If an employee violated that policy,
the employee was required to reimburse PGM at a rate of $.40/mile.
There is no evidence in the record that Williams violated PGM's
policies with regard to personal use of the company vehicle.

On the morning of February 23, 2015, Williams was driving to
work southbound on South McCarran Boulevard in his assigned Kia.
For unknown reasons, Williams allowed the Kia to cross into
northbound traffic where it collided head-on with the vehicle
plaintiff Clara Knight was driving.  Williams and Clara Knight's
husband, Logan Knight, sustained fatal injuries.  Clara Knight
survived, but was seriously injured.

Following the accident, plaintiffs collectively made claims to
LM General for the full $500,000 limit of bodily injury liability
coverage available under Williams' policy.  The nature and extent
of the injuries is not in dispute and the parties agree that those
injuries are sufficient to implicate the limits of the subject
insurance policy.  However, LM General denied plaintiffs' claims
solely on the basis of the "regular use" exception in Williams'

policy.  Plaintiffs disputed the applicability of the "regular use" exception and the parties agreed to seek a resolution of their dispute through a declaratory relief action filed with this court (ECF No. 1 (Plaintiffs' complaint)).

## II.  Legal standard

Summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998).  A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth.  *Lynn v. Sheet Metal Workers Int'l Ass'n,* 804 F.2d 1472, 1483 (9th Cir. 1986); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

Here, "[t]he parties agree on the applicable legal standard and appear to agree that the interpretation and application of the regular use exclusion to the facts of this case is a matter of law for the [c]ourt." (ECF No.20 (Def. Opposition to plaintiffs' Mot. Summ. J. at 2)).

## III. Analysis

### A.    Interpretation of insurance policies under Nevada law

In general, Nevada courts apply the principles of contract law when interpreting insurance policies.  *Continental Cas. Co. v. Summerfield*, 87 Nev. 127, 131, 482 P.2d 308, 310 (1971).  However,

4

"[w]hile clauses providing coverage are interpreted broadly so as to afford the greatest possible coverage to the insured, clauses excluding coverage are interpreted narrowly against the insurer." *National Union Fire Ins. v. Reno's Exec. Air*, 100 Nev. 360, 365, 682 P.2d 1380, 1383 (1984).

## B.   The regular use exclusion

Although the Williams' policy does not provide a definition of the term "regular use" the Supreme Court of Nevada has done so.  In Nevada, "regular use" "means constant, systematic  . . . continuous use; uninterrupted normal use for all purposes; without limitation as to use; and customary use as opposed to occasional use or special use."  *Hartford Ins. Group v. Winkler*, 89 Nev. 131, 138, 508 P.2d 8, 13 (1973); see also *Allstate Ins. Co. v. Larimer*, 433 F.Supp.2d 1195, 1198 (D. Nev. 2005) (citing with approval the Supreme Court of Nevada's definition of "regular use").

Here, LM General argues that the regular use exclusion applies because Williams used the Kia continuously during work hours, had keys to the Kia, kept the Kia at his home overnight, kept up with the Kia's maintenance schedule, and had continuous access to the Kia at all hours (ECF No. 18 (Def. Countermotion Summ. J.)).

While Williams was, under the terms of his employment, expected to use the Kia throughout the work day, store the Kia at his home, drive the Kia to and from work, and keep the Kia in good repair, Williams' personal use of the Kia was expressly prohibited under company policy.  Any violation of the policy was sanctioned at a rate of $.40/mile. This policy prohibiting personal use was clearly understood and adhered to by both PGM and Williams and there is no evidence before the court that Williams ever violated

5

the policy.

LM General cites to several cases outside of Nevada including *Farmers Ins. Co. of Ariz. v. Zumstein*, 675 P.2d 729 (Ariz. App. 1983) for the proposition that "a finding of regular use is not predicated on completely unrestricted use of the vehicle at issue." (ECF No. 18 (Def. Countermotion Summ. J.)).  Therefore, LM General seeks a broad interpretation of the regular use exclusion in Williams' policy.  However, under Nevada law, courts interpret exclusions narrowly to afford the greatest coverage to the insured. *Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 162, 252 P.3d 668, 672 (2011).  LM General could have provided a more expansive definition of "regular use" but did not do so in drafting the policy in question.

Because PGM placed express limitations on Williams' use of his company vehicle, and there is no evidence Williams exceeded those limitations, the regular use exclusion in Williams' LM General auto insurance policy does not bar coverage here.  Therefore, plaintiffs' motion for summary judgment (ECF No. 16) is GRANTED and LM General's countermotion for summary judgment (ECF No. 18) is DENIED.  The clerk of the court shall enter judgment in favor of the plaintiffs and against the defendant.

IT IS SO ORDERED.

DATED: This 2nd day of January, 2018.

_____
UNITED STATES DISTRICT JUDGE